# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY A. FRANKLIN, CDCR #E-66269, | CASE NO. 09cv1067-MMA (RBB) |
| Plaintiff, | |
| vs. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT** |
| L.E. SCRIBNER, et al., | |
| Defendants. | [Doc. No. 53] |

On May 17, 2010, Plaintiff Gregory Franklin, a state prisoner proceeding *pro se*, filed a Third Amended Complaint [Doc. No. 23] pursuant to 42 U.S.C. § 1983, alleging violations of his First, Fourteenth, and Eighth Amendment rights. Defendants move to dismiss all claims in the Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Defendants also move to dismiss several claims for failure to exhaust administrative remedies. Plaintiff filed an opposition [Doc. No. 66], Defendants filed a reply [Doc. No. 63], and Plaintiff filed a sur-reply [Doc. No. 72]. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.

///

---

[1] Defendants move to dismiss Plaintiff's Fourteenth Amendment claims, however, the Court previously dismissed these claims with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See July 13, 2010 Order*, Doc. No. 24, p.5. Accordingly, as to Plaintiff's Fourteenth Amendment claims, the Court finds Defendants' motion moot.

## BACKGROUND

Plaintiff is a prisoner currently incarcerated at Calipatria State Prison, proceeding *pro se* and *in forma pauperis* on his Third Amended Complaint ("TAC") filed pursuant to 42 U.S.C. § 1983. The following description of events is taken from the TAC and is not to be construed as findings of fact by the Court.[2]

On March 8, 2007, Plaintiff filed a civil rights complaint against thirteen defendants, all of whom were employed at the time by the California Department of Corrections at Calipatria State Prison in Calipatria, California. *See Franklin v. Scribner, et al.*, Civil Case No. 3:07-cv-438-WVG (RBB) ("the 2007 action"). The 2007 action was not resolved until September 29, 2010, when the district court entered summary judgment in favor of defendants as to Plaintiff's two remaining Eighth Amendment claims. Plaintiff alleges that Defendants in this action have committed various acts of retaliation against him in violation of the First Amendment as a result of him filing and pursuing the 2007 action.

Specifically, Plaintiff alleges that immediately after the United States Marshal served his complaint on the thirteen defendants in the 2007 action, between July 14, 2007 and July 19, 2007, Defendants in this case began retaliating in various ways, including taking Plaintiff's property, fabricating rules violations, and confining Plaintiff to his cell 24 hours per day for numerous days at a time. As a result, Plaintiff claims he suffered weight loss, cut gums, chest pains, headaches, sleep deprivation, and mental anguish which required medication.

Plaintiff alleges seven particular instances of retaliation, beginning with the events of July 16, 2007, when at approximately 11:00 p.m., Defendant Arias wrote him up for a serious rules violation because he covered up his cell light with a shirt. Defendant Madden acted as the reviewing officer and Defendant Davis was the hearing officer. Plaintiff was found guilty of a serious rules violation for misuse of state property (the shirt). As a result, Plaintiff was confined to his cell for 10 days, he lost his phone privileges for 30 days, and he suffered headaches, undue stress, mental

---

[2] Because this case comes before the Court on a motion to dismiss, the Court must accept as true all material allegations in the complaint and must also construe the complaint, and all reasonable inferences drawn therefrom, in the light most favorable to Plaintiff. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

anguish, and insomnia.

Plaintiff alleges that on July 18 and 25, 2007, several days after being served with the 2007 complaint, Defendant Vargas withheld five first class domestic envelopes to which Plaintiff was entitled as an indigent inmate. At the time, the prison was on lock down status and Plaintiff could only communicate through the mail. As a result of Defendant Vargas' actions, Plaintiff experienced headaches, undue stress, and mental anguish.

Plaintiff further alleges that on July 20, 2007, Defendant Arias issued a serious rules violation against Plaintiff for calling him a bad name. Defendant Madden acted as the reviewing officer and Defendant Davis was the hearing officer. Plaintiff was found guilty of a serious rules violation and lost 30 days of good time credits, 30 days of phone privileges, and 10 days of yard time. Plaintiff alleges that the serious rules violation was unwarranted and pursued by Defendants after being served with the 2007 complaint. As a result, Plaintiff had to endure 24 hours per day cell illumination which caused him to suffer headaches, insomnia, irritation, and mental anguish.

On August 11, 2007, Plaintiff was one amongst a group of inmates who returned to their cells in an untimely manner after being locked out of the building by Correctional Officer Reyes. Plaintiff received a serious rules violation, although the other inmates did not. Defendant Madden was the reviewing officer, and Lieutenant Duran was the hearing officer. At the hearing, Plaintiff called several witnesses who stated that they were also locked out but did not receive rules violations. The serious rules violation was dismissed.

Plaintiff alleges that on August 12, 2007, Defendant Hopper instructed Defendant Trujillo not to allow Plaintiff in the recreation yard and to keep him confined in his cell. Plaintiff requested permission to speak with Defendant Hopper, but Hopper refused.

On September 16, 2007, Defendant Maciel allegedly withheld a personal package sent to Plaintiff in retaliation for being sued. The package included, *inter alia*, denture adhesives. On October 10, 2007, Plaintiff filed an inmate grievance form regarding the package. The grievance was granted, with a response that "the package was brought from receiving and release and brought to A Facility, can't explain what happen [sic] to the package afterward, will replace within a week." Plaintiff did not receive his package within a week, and inquired about the package with a

correctional officer who in turn inquired with Defendant Maciel, who claimed that the package was not there. After Plaintiff produced his inmate grievance, Defendant Maciel stated that he had taken Plaintiff's package and sent it back. Plaintiff inquired with the company who sent the package. The company provided documentation indicating that the package had been returned and a replacement package had been sent at the request of officials at Calipatria. The replacement package was also returned to the company, and a second replacement package was sent. Plaintiff finally received the second replacement package several days after it was mailed.

Plaintiff alleges that he was placed on "C status" on September 18, 2007, for receiving two serious rules violations. Defendant Madden chaired the hearing. As a result, Plaintiff suffered various injuries arising out of his more restrictive custody. Plaintiff claims that one of the serious rules violations was fabricated and the other should not have been considered serious. Plaintiff claims that this action was taken in retaliation for his 2007 lawsuit.

Plaintiff also alleges that Defendant Small, in his capacity as Warden of Calipatria, violated his Eighth Amendment right to be free from cruel and unusual punishment by subjecting him to constant illumination in his cell. His cell has a large light right above his bunk, that is never turned off. In May 2008, Defendant Small issued a memorandum stating that inmates may not cover the light, and doing so would result in a serious rules violation and the revocation of privileges. Plaintiff states that he has suffered unrest, irregular sleeping habits, and extreme stress, due to the constant illumination in his cell.

Defendants move to dismiss Plaintiff's claims, arguing that his allegations are insufficient to state any plausible claim for relief. Defendants assert that Plaintiff did not exhaust his administrative remedies with respect to certain claims. Defendants further argue that they are immune from suit in their official capacities and there is no basis for Plaintiff's request for injunctive relief. Plaintiff opposes the motion. Defendants filed a reply in support of their motion, and Plaintiff filed a sur-reply in support of his opposition.

///

///

///

# DISCUSSION

## 1. Legal Standard

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. *See Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633 (1999). "The old formula – that the complaint must not be dismissed unless it is beyond doubt without merit – was discarded by the *Bell Atlantic* decision [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007)]." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

A complaint must be dismissed if it does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S.__ , 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff. *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004) (citing *Karam v. City of Burbank*, 352 F.3d 1188, 1192 (9th Cir. 2003)); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *N.L. Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

## 2. Standards Applicable to Pro Se Litigants

Where a plaintiff appears in propria persona in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). In giving liberal interpretation to a *pro se* civil rights complaint, courts may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id.*; *see also Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to

state a claim under § 1983). "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." *Jones*, 733 F.2d at 649 (internal quotation omitted).

The court must give a *pro se* litigant leave to amend his complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted) (citing *Noll v. Carlson*, 809 F.2d 1446, 1447 (9th Cir. 1987)). Thus, before a *pro se* civil rights complaint may be dismissed, the court must provide the plaintiff with a statement of the complaint's deficiencies. *Karim-Panahi*, 839 F.2d at 623-24. But where amendment of a *pro se* litigant's complaint would be futile, denial of leave to amend is appropriate. *See James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000).

### 3. First Amendment Claims

Plaintiff alleges seven separately identifiable instances of retaliation. Defendants move to dismiss all seven claims, arguing that two of the claims are unexhausted and all seven claims are insufficiently pled. Plaintiff does not address Defendants' arguments in his opposition due to his mistaken belief that the Court dismissed his retaliation claims. However, the Court conducted its preliminary review of Plaintiff's TAC pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and found Plaintiff's retaliation claims, as well as his Eighth Amendment claim relating to constant cell illumination, sufficiently pled to survive the *sua sponte* screening required by 28 U.S.C. § 1915(e)(2) and 1915A(b). *See July 13, 2010 Order*, p. 5-7. Thus, Plaintiff's retaliation claims remain in suit and the Court will address the merits of Defendants' motion to dismiss these claims below.

#### a) Exhaustion of Administrative Remedies

Defendants move to dismiss two of Plaintiff's retaliation claims for failure to exhaust administrative remedies prior to suit as required by 42 U.S.C. § 1997e(a).[3] Defendants assert that Plaintiff's claim relating to events on August 11, 2007 involving Defendants Madden, Reyes, and Duran ("August 11, 2007 retaliation claim") has not been exhausted. Defendants further assert that

---

[3] Non-exhaustion under Section 1997e(a) is an affirmative defense which should be brought by defendants in an unenumerated motion to dismiss under Federal Rule of Civil Procedure 12(b). *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.2003).

Plaintiff's claim relating to events on September 16, 2007 involving Defendant Maciel ("September 16, 2007 retaliation claim") has not been exhausted.

                I)      *Relevant Law*

The Prison Litigation Reform Act of 1995, Pub.L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), amended Title 42 of the United States Code, section 1997e, to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is therefore mandatory, and no longer left to the discretion of the district court. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). The PLRA's exhaustion requirement requires "proper exhaustion" of administrative remedies. *Woodford*, 548 U.S. at 93. This means "[p]risoners must now exhaust all 'available' remedies," *id.* at 85, in "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90-91. The requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id.* Further, the remedies "available" need not meet federal standards, nor need they be "plain, speedy and effective." *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Booth*, 532 U.S. at 739-40 & n. 5.

It is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. *Jones v. Bock*, 549 U.S. 199, 218 (2007). The California Department of Corrections and Rehabilitation ("CDCR") provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal.Code Regs. Tit. 15, § 3084.1(a). The CDCR also provides its inmates the right to file administrative appeals alleging misconduct by correctional officers. *See id.* § 3084.1(e). In order to exhaust all available administrative remedies within this system, a prisoner must submit his complaint as a 602 inmate appeal and proceed through several levels of appeal: (1) informal level grievance filed directly with any correctional staff member; (2) first formal level appeal filed with one of the institution's appeal coordinators; (3) second formal level appeal filed with the institution head or designee; and (4) third formal level appeal filed with the

1  CDCR director or designee. *Id*. § 3084.5; *Brodheim v. Cry*, 584 F.3d 1262, 1264-65 (9th Cir.2009);
2  *Barry v. Ratelle*, 985 F.Supp. 1235, 1237 (S.D.Cal.1997). This satisfies the administrative remedies
3  exhaustion requirement under Section 1997e(a). *Barry*, 985 F.Supp. at 1237-38.

        ii)  *Analysis*

  In support of their contentions, Defendants submit the declaration of D. Foston, an employee of the CDCR who serves as the Chief of Inmate Appeals Branch. The Inmate Appeals Branch receives all inmate appeals submitted to the Third or highest level for non-medical appeals. *Foston Decl'n* ¶ 2. A search of the Inmate Appeals Branch's computer records was conducted for all appeals filed by Plaintiff, and a computer print-out of the results was generated. *Foston Decl'n* ¶¶ 6-9. The computer print-out lists the appeals to the Director's level of review filed by Plaintiff and "accepted for review" from January 1993 to September 15, 2010 (the date the computer print-out was generated) or "screened-out" at the Director's level of review from August 2000 to September 15, 2010. *Id., Ex. A*.

  Defendants assert that the Inmate Appeals Branch has no record of Plaintiff having pursued any appeals relating to his August 11, 2007 and September 16, 2007 retaliation claims to the Director's level of review. *Foston Decl'n* ¶¶ 11-12; *Ex. A*. According to the declaration of D. Foston, since his arrival at Calipatria on December 19, 2003, Plaintiff has submitted 22 accepted inmate appeals for review at the Director's level of review and 9 rejected inmate appeals, and none of those appeals involved the August 11, 2007 or September 16, 2007 retaliation claims. The exhibits attached in support of the Foston declaration further demonstrate that none of the accepted or rejected inmate appeals involved these two instances of alleged retaliation. *See Foston Decl'n, Exs. A and B*. Defendants have provided a copy of each Director's Level Appeal Decision regarding the other instances of retaliation at issue in this case. *See id., Ex. B*. Thus, the record appears to reflect that Plaintiff was aware of the administrative grievance procedure and knowledgeable regarding its use.

///
///
///

1 | Plaintiff received notice that Defendants seek dismissal in part because he failed to exhaust
2 | administrative remedies.[4] *See November 8, 2010 Order*, Doc. No. 54. The Court advised Plaintiff
3 | of his opportunity to include in his opposition to Defendants' motion whatever arguments and
4 | documentary evidence he may have to show that he did, in fact, exhaust all administrative remedies
5 | that were available to him prior to filing suit. *See Wyatt*, 315 F.3d at 1119-21. However, as noted
6 | above, Plaintiff does not address his retaliation claims in his opposition due to his mistaken belief
7 | that the Court previously dismissed these claims. As a likely result, Plaintiff also does not address
8 | his failure to exhaust his administrative remedies regarding the two instances of retaliation at issue,
9 | nor does he attach any documentary evidence of exhaustion.

The Court finds that while Plaintiff certainly has not conceded non-exhaustion as to his August 11, 2007 and September 16, 2007 retaliation claims, the record conclusively demonstrates that these claims are in fact unexhausted. Accordingly, the Court grants Defendants' motion to dismiss these claims without prejudice. Because the August 11, 2007 claim is the only cause of action Plaintiff brings against Defendant Maciel, the Court dismisses Defendant Maciel from this action.

        b)     <u>Failure to State a Claim</u>

            I)     *Relevant Law*

In the prison context, allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a Section 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995); *Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989). "[A] viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4)

---

[4] As the Court noted in its November 8, 2010 order, "[i]n deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." *Wyatt v. Terhune*, 315 F.3d 1108, 1119-20 (9th Cir. 2003) (citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 369 (9th Cir. 1988) (per curiam)). If the court looks beyond the pleadings when deciding a motion to dismiss for failure to exhaust, "a procedure closely analogous to summary judgment," the Court "must assure that [the plaintiff] has fair notice of his opportunity to develop a record." *Id.* at 1120 n.14; *see also Marella v. Terhune*, 568 F.3d 1024, 1028 (9th Cir. 2009) (remanding case to district court where court failed to "effectively give [plaintiff] fair notice that he should have submitted evidence regarding exhaustion of administrative remedies").

chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

Adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity. *Pinard v. Clatskanie School District*, 467 F.3d 755, 770 (9th Cir.2006). Both litigation in court and filing inmate grievances are protected activities and it is impermissible for prison officials to retaliate against inmates for engaging in these activities. A prisoner may satisfy the fourth element by alleging harm, rather than chill. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir.1995); *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir.1989). Furthermore, as to the second element, "timing can properly be considered as circumstantial evidence of retaliatory intent." *Pratt* at 808. Here, Plaintiff alleges generally that Defendants' retaliatory actions began immediately after the thirteen prison employees named in the 2007 action were served with the operative complaint.

ii)   *Analysis*

Each of Plaintiff's exhausted retaliation claims is discussed individually below. However, the Court notes that Plaintiff alleges the fourth element of his retaliation claims generally, as it relates to the claims taken as a whole. In his TAC, Plaintiff states that Defendants "tried to prevent plaintiff from pursuing his complaint, which the retaliation did have somewhat of an effect on plaintiff adequately presenting all of his claims." *See TAC*, p. 5. Plaintiff goes on to allege that when the Court ordered him to amend his complaint in the 2007 action, he had already experienced retaliation and so "when the court ask him to identified [sic] person's, plaintiff would not identified [sic] all of these peoples in fear of suffering further retaliation." *Id*. The Court finds that these allegations, when taken together with Plaintiff's specific allegations of harm resulting from each instance of retaliation, satisfy the fourth element as delineated in the *Rhodes* case.

a)   July 16, 2007 Retaliation Claim

Plaintiff alleges that Defendants Arias, Madden, and Davis (1) wrote him up for a serious rules violation when he covered his cell light with a shirt; (2) because (3) other prison officials at Calipatria had been served with the complaint in the 2007 action several days prior; (4) Plaintiff suffered the loss of prison privileges as well as physical and mental harm, in addition to his

allegations regarding chill, *supra*; (5) for no legitimate penological purpose, since the violation of misuse of state property ordinarily requires the property to be valued at greater than $50, and the shirt could not have been valued at more than $10. *See TAC*, p. 6-7. These allegations are sufficient to state a retaliation claim against Defendants Arias, Madden, and Davis.

### b) July 18 and 25, 2007 Retaliation Claim

Plaintiff alleges that Defendant Vargas (1) withheld Plaintiff's mailing envelopes; (2) because (3) Defendant Vargas had been served with Plaintiff's 2007 complaint on July 14, 2007; (4) such that Plaintiff was unable to communicate with anyone due to the prison lock down, in addition to his allegations regarding chill, *supra*; (5) and "none of the retaliatory acts advance any legitimate penological goal." *See TAC*, p. 6. These allegations are sufficient to state a retaliation claim against Defendant Vargas.

### c) July 20, 2007 Retaliation Claim

Plaintiff alleges that Defendants Arias, Madden, and Davis retaliated against him when (1) he received a serious rules violation for disrespecting Defendant Arias by calling him a curse word; (2) because (3) Plaintiff had brought a civil complaint against 13 prison employees; (4) Plaintiff suffered physical and mental harm, as well as loss of prison privileges, in addition to his allegations regarding chill, *supra*; (5) for no legitimate penological purpose, since a serious rules violation report is not warranted for the minor infraction of calling a correctional officer a bad name in the absence of any potential danger. *See TAC*, p. 9. These allegations are sufficient to state a retaliation claim against Defendants Arias, Madden, and Davis.

### d) August 12, 2007 Retaliation Claim

Plaintiff alleges that Defendants Hopper, Haley, and Trujillo (1) kept him confined to his cell and did not allow him to have recreational time in the yard; (2) because (3) of the civil lawsuit, which named Haley and Trujillo in particular as defendants; (4) Plaintiff suffered physical and mental harm requiring medication and medical attention, in addition to the allegations of chill, *supra*; (5) for no legitimate penological purpose. *See TAC*, p. 6, 11. These allegations are sufficient to state a retaliation claim against Defendants Hopper, Haley, and Trujillo.

///

|   |   |   |
|---|---|---|
| 1 | e) | September 18, 2007 Retaliation Claim |

Plaintiff alleges that Defendant Madden (1) changed his privilege status to "C status" due to two serious rules violations; (2) because (3) of the 2007 civil action Plaintiff had filed; (4) Plaintiff suffered a variety of harms, related to his prison privileges, as well as to his mental and physical health, in addition to his allegations of chill, *supra*; (5) for no legitimate penological purpose since the rules violations were not actually serious, and instead were fabricated and overstated. *See TAC*, p. 14-15. These allegations are sufficient to state a retaliation claim against Defendant Madden.

### 5. *Eighth Amendment Claim*

Plaintiff alleges that Defendant Small, Warden at Calipatria, violated his Eighth Amendment right to be free from cruel and unusual punishment by enforcing prison regulations that result in constant illumination in his cell. Defendants move to dismiss this claim, arguing that courts have addressed the exact conditions of confinement described by Plaintiff and found no constitutional violation as a result of those conditions.

#### a) Relevant Law

The Eighth Amendment prohibits cruel and unusual punishment, and applies to the states through the Due Process Clause of the Fourteenth Amendment. U.S. Const. amend. VIII; *Robinson v. California*, 370 U.S. 660, 666 (1962). Thus, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being." *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989).

In order to state a plausible Eighth Amendment claim, a plaintiff must allege facts sufficient to demonstrate both objective and subjective components. First, the deprivation must be objectively serious such that the prison official's act or omission resulted "in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Second, a prison official must have a "sufficiently culpable state of mind." *Id.* Under this latter component, the official will not be held liable for inhumane conditions "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial

risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

        b)       <u>Analysis</u>

Defendants argue that Plaintiff fails to allege an objectively serious condition of confinement. The Supreme Court has held that "extreme deprivations are required to make out a conditions of confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). As the Second Circuit has explained, "[b]ecause society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient . . ." *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir.1999); *see also Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999) ("The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones.").

Here, the condition of confinement being challenged is described by Plaintiff as "a big cell light, right above plaintiff bunk in his face, that never cut-off [sic]." *See TAC*, p.16. Constant illumination of a prison cell, standing alone, has been upheld as constitutional under certain circumstances. *See, e.g., Warren v. Kolender*, 2009 WL 196114, at * 15 (S.D.Cal., Jan.22, 2009); *Pozo v. Hompe*, 2003 WL 23185882, at *10 (W.D.Wis. Apr.8, 2003). However, 24-hour lighting of prison cells with excessively bright bulbs has been held to violate the Eighth Amendment. *See Keenan v. Hall*, 83 F.3d 1083, 1090-91 (9th Cir.1996).

Courts have held that the inquiry with respect to whether constant security lighting in prison cells violates the Eighth Amendment is necessarily fact-specific, *see, e.g., Shepherd v. Ault*, 982 F.Supp. 643, 645 (N.D.Iowa 1997), and often depends upon the brightness of the light at issue. Intensities in a range that courts have generally found permissible under the Constitution vary. *See Vasquez v. Frank*, 290 F. App'x 927, 929 (7th Cir. Aug.15, 2008) (24-hour lighting involving a single, 9-watt fluorescent bulb does not objectively constitute an "extreme deprivation."); *McBride v. Frank*, 2009 WL 2591618, at *5 (E.D.Wis. Aug.21, 2009) (constant illumination from a 9-watt fluorescent bulb does not objectively deny "the minimal civilized measure of life's necessities."); *Wills v. Terhune*, 404 F.Supp.2d 1226, 1230-31 (E.D.Cal.2005) (holding that 24-hour illumination by 13-watt bulb was not objectively unconstitutional); *Pawelski v. Cooke*, 1991 WL 403181, at *4 (W.D.Wis. July 18, 1991) ("Having a single 40 watt light bulb on 24 hours a day for security purposes amounts to no more than an inconvenience to the segregation inmates."), aff'd, 972 F.2d

352 (7th Cir.1992) (table opinion); *compare Keenan*, 83 F.3d at 1090-91 (lighting from "large fluorescent lights" was unconstitutional where plaintiff alleged that he "had no way of telling night or day"); *Shepherd*, 982 F.Supp. at 646-50 (summary judgment denied where inmates claimed harm from 60-watt bulbs).

Based on the fact intensive nature of the inquiry that must result from a cell illumination claim, Plaintiff fails to allege sufficient facts to state a plausible claim. Plaintiff does not include any allegations in his TAC as to the type of lighting in his cell or its brightness, without which he cannot demonstrate the existence of an objectively serious deprivation. Accordingly, the Court dismisses this claim. However, the Court finds that Plaintiff sufficiently pleads the subjective component of an Eighth Amendment claim against Defendant Small. Thus, dismissal is without prejudice and with leave to amend because Plaintiff may possibly be able to allege additional facts sufficient to state the objective component of his claim.

*6. Eleventh Amendment Immunity*

The Eleventh Amendment prohibits damages actions against state officials acting in their official capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n. 10 (1989). It does not, however, "bar actions against state officers in their official capacities if the plaintiffs seek only a declaratory judgment or injunctive relief." *Chaloux v. Killeen*, 886 F.2d 247, 252 (9th Cir.1989) (internal quotations omitted). Nor does it bar damages actions against state officials in their personal capacities. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991). The Eleventh Amendment prohibits only damages actions against the "official's office"– actions that are in reality suits against the state itself – rather than against its individuals. *See id.* at 26; *Will*, 491 U.S. at 71; *Stivers v. Pierce*, 71 F.3d 732, 749 (9th Cir.1995).

Here, Plaintiff sues Defendants in their individual and official capacities. *See TAC*, p. 2-4. He asks for injunctive relief and for $150,000 in damages. *Id.*, p. 18. Because of the bar on damages actions against individuals acting in their official capacities, the Court grants Defendants' motion in part and dismisses Plaintiff's claim for money damages against Defendants in their official capacities.

///

*7.     Injunctive Relief*

In his prayer for relief, Plaintiff requests an injunction preventing Defendants "from further retaliation, request transfer to another prison close to his family, to assure there will be no further retaliation." *See TAC*, p. 18. Defendants ask the Court to deny Plaintiff's request for injunctive relief, arguing that he has not demonstrated his entitlement to such relief. However, Defendants provide no authority that would authorize the Court to dismiss Plaintiff's claims for injunctive relief at this time. Though it may be appropriate at a later stage in the litigation to deny Plaintiff's request for injunctive relief, it is not clear that the Court can reach this decision on a motion to dismiss. *See Friends of Frederick Seig Grove # 94 v. Sonoma Cnty. Water Agency*, 124 F.Supp.2d 1161, 1172 (N.D.Cal.2000) ("While the Court may ultimately agree with the defendants that injunctive relief is inappropriate, it is by no means evident that the Court can reach such a determination on a motion to dismiss. Accordingly, the defendants' motion to dismiss the plaintiff's request for injunctive relief is denied as premature.").

By requesting injunctive relief in his TAC, Plaintiff is not seeking injunctive relief through either a motion for preliminary injunction or a temporary restraining order. Furthermore, in light of the Court's above determination that Plaintiff has pled an ongoing constitutional violation, the Court denies Defendants' motion to dismiss Plaintiff's claim for injunctive relief.

## CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss as follows:

(1) The Court **GRANTS** Defendants' motion and **DISMISSES** Plaintiff's August 11, 2007 and September 16, 2007 First Amendment retaliation claims without prejudice;

(2) The Court **DISMISSES** Defendant Maciel from this action;

(3) The Court **DENIES** Defendants' motion to dismiss Plaintiff's July 16, 2007, July 18 - 25, 2007, July 20, 2007, August 12, 2007, and September 18, 2007 First Amendment retaliation claims;

(4) The Court **GRANTS** Defendants' motion and **DISMISSES** Plaintiff's Eighth Amendment claim without prejudice and with leave to amend;

(5) The Court **GRANTS** Defendants' motion and **DISMISSES** Plaintiff's claim for monetary damages against Defendants in their official capacities;

(6) The Court **DENIES** Defendants' motion to dismiss Plaintiff's request for injunctive relief; and,

(7) The Court **GRANTS** Plaintiff thirty (30) days from the filing date of this order to file a Fourth Amended Complaint. The Court grants leave to amend only as to Plaintiff's Eighth Amendment claim as alleged against Defendant Small. Plaintiff may not allege any new claims against any additional defendants. The Fourth Amended Complaint must be complete in itself without reference to any prior pleadings. *See* Local Rule 15.1. All claims not re-alleged in the Fourth Amended Complaint will be deemed to have been waived. *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir.1987). The Fourth Amended Complaint shall be Plaintiff's final pleading.

**IT IS SO ORDERED**.

DATED: April 4, 2011

Hon. Michael M. Anello
United States District Judge