1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| GREGORY ALLEN FRANKLIN | CASE NO. 09CV1067-MMA (RBB) |
|---|---|
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| L. SMALLS, R. DAVIS, G. HOPPER, J. VARGAS, R. MADDEN, S.F. ARIAS, C. MACIEL, et al. | [Doc. No. 105] |
| Defendants. | |

This civil rights action is presently before the Court on Defendants Madden, Davis, Hopper, Arias, Vargas, Trujillo, and Small's Motion for Summary Judgment. [Doc. No. 105.] The Court granted Plaintiff Gregory Franklin ("Plaintiff"), a state prisoner proceeding *pro se*, leave to file a supplemental opposition to the motion. [Doc. No. 138.] Despite receiving multiple extensions of time, Plaintiff failed to do so. [Doc. Nos. 146, 148.] For the following reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment in its entirety, and dismisses the action.

## BACKGROUND

Plaintiff is a former inmate at Calipatria State Prison in Calipatria, California. On March 8, 2007, Plaintiff filed a separate civil rights complaint against thirteen defendants, all of whom were employed at the time by the California Department of Corrections at Calipatria State Prison in Calipatria, California. *See Franklin v. Scribner, et al.*, Civil Case No. 3:07-cv-438-WVG (RBB)

(the "2007 Action"). The 2007 Action was not resolved until September 29, 2010, when the district court entered summary judgment in favor of Defendants as to Plaintiff's two remaining Eighth Amendment claims.

On May 14, 2009, Plaintiff filed the present action, alleging various constitutional claims, including an Eighth Amendment constant cell illumination claim and several First Amendment claims against a number of correctional officers named as defendants in the 2007 Action. Over the course of the next two years, Plaintiff's Complaint, First Amended Complaint, Second Amended Complaint, and Third Amended Complaint were all dismissed for failure to state a claim. [*See* Doc. Nos. 3, 18, 22, 74.] On May 5, 2011, Plaintiff filed a Fourth Amended Complaint ("FAC") [Doc. No. 79], which, after being partially dismissed [*see* Doc. No. 89], now serves as the operative pleading in this action.

Defendants filed the pending Motion for Summary Judgment on June 11, 2012. [Doc. No. 105.] On July 27, 2012, Plaintiff submitted an opposition [Doc. No. 125] to Defendants' motion, arguing that he was not able to defend successfully against the motion due to Defendants' failure to respond sufficiently to his discovery requests. Later, following an order which required Defendants to supplement their discovery responses [Doc. No. 137], the Court granted Plaintiff leave to file a supplemental opposition to the summary judgment motion. [Doc. No. 138.] Thereafter, Plaintiff twice requested additional time to file his supplemental opposition. The Court granted these requests, giving Plaintiff an additional forty-six days to submit an opposition. [Doc. Nos. 146, 148.] However, Plaintiff failed to file a supplemental response, and the Court denied his third request for additional time to respond.[1] [Doc. No. 152.]

**A.    Plaintiff's Allegations[2]**

---

[1] All told, Plaintiff had approximately 10 weeks to draft and file a supplemental opposition to Defendants' motion. He states he was unable to do so because he did not have adequate access to the law library. [*See* Doc. Nos. 144, 147, 151.] However, during this time period, Plaintiff was able to draft a sizeable "Motion to Compel Defendants to Answer Court Order" [Doc. No. 154], so Plaintiff maintained an ability to draft legal documents notwithstanding his purportedly inadequate access to the law library.

[2] Although Franklin offered no evidence in opposition to Defendants' motion, a verified complaint in a *pro se* civil rights action may constitute an opposing affidavit for purposes of the summary judgment rule, where the complaint is based on an inmate's personal knowledge of

Plaintiff currently has six pending claims: five First Amendment retaliation claims, and one Eighth Amendment claim for cruel and unusual punishment.

With respect to the retaliation claims, Plaintiff avers that five separate incidents[3] involving prison personnel violated his First Amendment rights, because the prison personnel took action in retaliation for Plaintiff exercising his First Amendment rights by filing the 2007 Action.

On July 16, 2007, Plaintiff alleges that Defendant Arias woke him up at approximately 11:00 p.m. and cited Plaintiff for a serious rule violation because he covered up his cell light with a shirt. Plaintiff states that his requests to know how many other inmates received similar citations were rebuffed by Defendant Davis. The serious rule violation was upheld by the reviewing officer, Defendant Madden, and Defendant Davis, the hearing officer, found Plaintiff guilty of the violation. As a result, Plaintiff was confined to his cell for 10 days, lost his phone privileges for 30 days, and suffered headaches, undue stress, mental anguish, and insomnia.

On July 18 and 25, 2007, Plaintiff alleges that Defendant Vargas withheld five first class domestic envelopes to which Plaintiff was entitled as an indigent inmate. At the time, the prison was on lock down status and Plaintiff could only communicate through mail. Plaintiff alleges Defendant Vargas denied him the envelopes in retaliation for filing the 2007 Action. As a result of Defendant Vargas' actions, Plaintiff experienced headaches, undue stress, and mental anguish.

On July 20, 2007 at 11:30 p.m., Plaintiff states that he was in his cell when he called Defendant Arias a vulgar name. Subsequently, Defendant Arias issued a rules violation against Plaintiff for disrespecting staff. Plaintiff states that the violation should not have qualified as a "serious" violation, which necessitates a showing that Plaintiff's behavior could lead to a dangerous altercation. Because he and the other inmates were alone in their cells, Plaintiff alleges there was no evidence to support this showing. Nonetheless, purportedly in retaliation for filing

---

admissible evidence, and not merely on the inmate's belief. *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curiam). Here, Plaintiff's initial Complaint and Third Amended Complaint are verified, though the Second and Fourth Amended Complaints (the operative complaint) are not. Because two of Plaintiff's previous complaints are verified, the Court will also construe the operative complaint as verified, and consider it as evidence.

[3] Originally, Plaintiff alleged seven separate instances of retaliation. However, two were dismissed previously by the Court. [Doc. No. 89.]

the 2007 Action, Defendant Arias, Defendant Madden (the reviewing officer), and Defendant Davis (the hearing officer) deemed it a serious rule violation. As a result, Plaintiff lost 30 days of good time credits, 30 days of phone privileges, and 10 days of yard time. Consequently, Plaintiff had to endure 24 hours per day cell illumination, which caused him to suffer headaches, insomnia, irritation, and mental anguish.

On August 12, 2007, Plaintiff alleges that, in retaliation for filing the 2007 Action, Defendant Hopper instructed Defendants Trujillo and Haley to not allow Plaintiff in the recreation yard, but to confine him in his cell. Plaintiff requested permission to speak with Hopper, but Hopper refused. As a result, Plaintiff suffered headaches, insomnia, and mental anguish.

Finally, on September 18, 2007, at a hearing chaired by Defendant Madden, Plaintiff alleges that he was placed on "C Status" for the two serious rule violations he received from Defendant Arias on July 16 and July 20. Plaintiff claims that neither of the rule violations should have been considered serious. As a result of being placed on "C Status," Plaintiff suffered various injuries arising out of his more restrictive custody.

Lastly, in regards to the pending Eighth Amendment claim, Plaintiff alleges that his right to be free from cruel and unusual punishment was violated when he was subjected to constant illumination in his cell. Specifically, Plaintiff states that a large 7-watt high florescent light bulb is right above his bunk and never turns off. He alleges the light is so bright that it illuminates the entire cell, such that everything in the cell is visible at night from fifty yards away. Plaintiff further alleges that in 2008, Defendant Small issued a memorandum warning the inmates that anyone caught trying to cover the light would receive a rules violation and lose privileges. According to Plaintiff, the constant illumination has caused him to suffer from "unrest, irregular sleeping habits, extreme stress," for which he must take medication. [*Fourth Am. Compl.*, ECF pg. 16 of 18.]

**B. Defendant's Statement of Undisputed Facts**[4]

---

[4] The following facts come from Defendants' Statement of Undisputed Material Facts submitted concurrently with their Motion for Summary Judgment. Plaintiff did not file an opposition to Defendants' Statement of Undisputed Facts.

Calipatria State Prison is a Level IV facility, the highest security level within the California prison system. Level IV prisons are intended to safely hold and program those inmates found to be the most serious threat both inside the prisons and, should they happen to escape, to the community at large. With respect to lighting in the cells, it creates a security concern when inmates obscure the vision of officers by putting covers over the lights (typically flammable newspapers or clothing). It is essential that officers be able to see what inmates are doing in their cells as they approach. The security light allows the officers to scan for any movement or condition within the cell which would alert them to a potential danger (some staff members have been murdered or assaulted while approaching a cell) as they approach the cell door.

The security light is also necessary for the inmates' personal safety. It aids them in being able to see if they get up in the evening to move about the cell or use the toilet. It further assists in protecting them from assaults and murders which have occurred within the cells, as well as to curtail the manufacture and use of illegal drugs and alcohol. Additionally, the security lights aid in preventing escapes, as covering the lights in the past has actually aided in inmate escapes.

Plaintiff covered the light in his cell. This particular light was a 7-watt fluorescent light bulb. This 7-watt level lighting is considered low level or dim lighting conditions, and there are no known health risks associated with it, even when on for 24 hours a day. Medical evidence and records demonstrate that Plaintiff has not suffered any adverse health conditions as a result of the lighting conditions. The inmates at Calipatria are permitted to use a cloth or sock to cover their eyes from the security light while resting in their beds.

**July 16 Incident**

On July 16, 2007, Defendant Arias filed a rules violation report ("RVR") regarding Plaintiff for covering his cell light ("July 16 Incident"). Defendant Arias wrote up numerous other inmates for the same type of misconduct reported in Plaintiff's RVR. Contrary to Plaintiff's characterization, Defendant Arias does not determine whether a rule violation is "serious" or "administrative." According to CCR Title 15, section 3313, the only officer who can make this classification is one who is at the level required to conduct a "serious" disciplinary hearing–normally an officer with the rank of lieutenant or higher. Defendant Arias is not of that

rank. Defendant Madden played no role whatsoever in the classification or review of the RVR regarding the July 16 Incident. Defendant Davis simply agreed with the determination made by another lieutenant as to the serious violation classification in connection with the subject RVR of July 16, 2007. Defendants Davis and Arias were not named parties in the prior lawsuit upon which Plaintiff's retaliation claim is premised.

**July 18 and July 25 Incident**

Plaintiff requested indigent envelopes on July 8, July 15, and July 18, 2007. After failing to receive the envelopes, Plaintiff filed a CDCR Form 602 Inmate Appeal, and was then interviewed by the mail room sergeant, R. Sutton (not a defendant in this action). The mail room was involved in the appeal because that is where inmates send their requests for indigent envelopes. The mail room then sends the envelopes to the housing unit for delivery. Defendant Vargas–accused of withholding envelopes from Plaintiff–did not work in the mail room, but rather, worked in Plaintiff's housing unit. Defendant Vargas would not have known about the request for indigent envelopes or that Plaintiff was supposed to have received those envelopes unless the mail room had actually sent the envelopes to the housing unit where he worked. Due to a mail room error, the mail room failed to send the envelopes to the housing unit. On August 8, 2007, Sergeant Sutton issued 10 envelopes to Plaintiff to make up for the mail room error pertaining to the July 8, 2007 request. Documents indicate Plaintiff then signed two receipts for the 10 envelopes, one for the missing July 8 distribution and one for the allegedly missing July 15 distribution.

**July 20 Incident**

On July 20, 2007, Defendant Arias wrote an RVR regarding Plaintiff's disrespect of staff, after Plaintiff used highly disrespectful language in an environment where staff must maintain respect and keep inmates calm for their own safety. Defendant Arias filed the RVR because there was a potential for mass violence or mass disruptive conduct by other inmates in the area of Plaintiff's cell. Inmates often react to vocal disrespect by becoming violent themselves, and often respond by flooding their cells, beating cell door fronts, starting fires, and yelling. Thus, it was critical that Defendant Arias stop Plaintiff's behavior and that Plaintiff learn that such future

behavior could not be tolerated.

Again, Defendant Arias does not determine whether a rule violation is "serious" or administrative" when he fills out an RVR, as he is not of the required rank to do so. Lieutenant Nelson (who is not a defendant) classified the violation as "serious." Defendant Davis merely agreed with Lieutenant Nelson's determination.

**August 12 Incident**

Plaintiff states that on August 12, 2007, Defendants Hopper, Trujillo and Haley prevented him from entering the recreation yard. Plaintiff filed a CDCR Form 602 Inmate Appeal regarding the alleged incident. The first level reviewer interviewed Plaintiff and responded that there was no evidence that Defendant Hopper confined him to his cell as claimed. The second level of review indicated that Plaintiff did not present any new or additional information, and upheld the first level response. The third level review also found no evidence upon which to alter the prior two responses. At deposition, Plaintiff stated that he "never seen Sergeant Hopper directly tell them to not allow me to go to the yard." Plaintiff further admitted that he does not know if Defendant Hopper confined him to his cell. There are no prison records for the alleged confinement or restriction. Defendants Trujillo and Hopper had frequent contact with Plaintiff, yet Plaintiff does not complain about any other alleged misconduct by them. Defendant Hopper was not named as a defendant in the 2007 lawsuit.

### LEGAL STANDARD FOR SUMMARY JUDGMENT

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party who must demonstrate the existence of a factual dispute. The fact in contention must be material, i.e., a fact that might affect the outcome of the suit under the

governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and the dispute must be genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 250; *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).

Federal Rule of Civil Procedure 56(e) compels the non-moving party to "set out specific facts showing a genuine issue for trial" and not to "rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Rule 56(c) mandates the entry of summary judgment against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

When considering a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. FED. R. CIV. P. 56(c). At summary judgment, the court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But, if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 248-49.

Rule 56(e) permits a district court to consider unopposed facts admitted for purposes of the motion and further allows a court to "grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)-(3). Summary judgment should not be entered merely because a party fails to file an opposition, and the Court still must analyze whether the moving party adequately establishes the absence of triable issues of fact. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993); *see also Scarff v. Intuit, Inc.*, 318 Fed. App'x 483, 486 (9th Cir. 2008).

### DISCUSSION

**A.  Eighth Amendment Claim**

Plaintiff claims that Defendant Small, as the Warden of Calipatria, violated his Eighth Amendment rights because a 7-watt fluorescent light is left on all day in his cell. He states this

caused irregular sleeping habits and extreme stress.

The Eighth Amendment prohibits cruel and unusual punishment, and applies to the states through the Due Process Clause of the Fourteenth Amendment. U.S. Const. amend. VIII; *Robinson v. California*, 370 U.S. 660, 666 (1962). The Constitution, however, does not require comfortable prisons. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), *rev'd on other grounds sub nom.*, *Bell v. Wolfish*, 441 U.S. 520, (1979). On the contrary, prison conditions may in fact be restrictive or harsh without violating the Constitution. *Rhodes*, 452 U.S. at 347. In light of this, the Court accords prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Wolfish*, 441 U.S. at 547.

Nonetheless, the Eighth Amendment does prohibit the unnecessary and wanton infliction of pain, *Whitley v. Albers*, 475 U.S. 312, 319 (1986), as well as deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to establish liability, Plaintiff must show that Defendants knew of, and disregarded, an excessive risk to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Exposure to conditions that are "demonstrably unsafe" can violate the Eighth Amendment if the prisoner can prove the risk is "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993); *Keenan v. Hall*, 83 F.3d 1083, 1090-91 (9th Cir. 1991). A prisoner must show that prison officials were both objectively and subjectively indifferent to health or safety to prevail on an Eighth Amendment claim of deliberate indifference. *Farmer*, 511 U.S. at 834-37.

Here, the evidence fails to establish either the objective or subjective components of an Eighth Amendment claim. Constant illumination of a prison cell has been upheld as constitutional under various circumstances. *See, e.g.*, *Warren v. Kolender*, 2009 U.S. Dist. LEXIS 4817 (S.D. Cal. 2009) (summary judgment granted where there was no proof that cell light was excessively bright, and no evidence showing the light caused the plaintiff's sleeping problems). However, 24-hour lighting of prison cells with excessively bright bulbs has been held to violate the Eighth Amendment. *Keenan v. Hall*, 83 F.3d 1083, 1090-91 (9th Cir. 1996). In *Keenan*, the fluorescent

lights were so bright that the inmate was unable to tell whether it was night or day. *Id.* at 1091. Thus, the brightness of the light in question is relevant in deciding whether a constitutional violation has occurred.

Here, both Plaintiff and Defendant Small agree that the light in Plaintiff's cell is a 7-watt fluorescent light bulb. Defendant provides evidence that the light is considered to be low level or dim lighting conditions. [*See* Statement of Undisputed Facts ("SUF") ¶¶ 1-2.] Substantially similar cases have held that such lighting is not objectively harmful and serves the legitimate penological interest of safety and security. *See Walker v. Woodford*, 593 F. Supp. 2d 1140, 1147 (S.D. Cal. 2008) (holding that 24-hour illumination by 7-watt compact fluorescent bulb that emitted no more than 400 lumens did not violate Eighth Amendment); *Vasquez v. Frank*, 290 F. App'x 927, 929 (7th Cir. 2008) (24-hour lighting involving a single, 9-watt fluorescent bulb does not objectively constitute an "extreme deprivation."); *McBride v. Frank*, 2009 WL 2591618, at *5 (E.D. Wis. 2009) (constant illumination from a 9-watt fluorescent bulb does not objectively deny "the minimal civilized measure of life's necessities"); *Wills v. Terhune*, 404 F. Supp. 2d 1226, 1230-31 (E.D. Cal. 2005) (holding that 24-hour illumination by 13-watt bulb was not objectively unconstitutional); *Pawelski v. Cooke*, 1991 WL 403181, at *4 (W.D. Wis. 1991) ("Having a single 40 watt light bulb on 24 hours a day for security purposes amounts to no more than an inconvenience to the segregation inmates."), *aff'd*, 972 F.2d 352 (7th Cir.1992) (table opinion).

The conditions complained of by Plaintiff do not violate the Eighth Amendment. While Plaintiff was indeed subject to "constant illumination," the illumination was, based on the evidence, low to dim. While Plaintiff alleges in his complaint that the light was so bright that it illuminates the entire cell such that everything in the cell is visible at night from fifty yards away, this self-serving and otherwise unsupported statement does not convince the Court that the lighting condition rose to the level of a constitutional violation. This is especially true given the reasons for the lights: the security lights are necessary within the prison to allow officers to observe inmate activity in cells, and to maintain security and safety. Furthermore, even if Plaintiff could establish that the lighting condition was objectively dangerous to his health, Plaintiff offers no evidence suggesting that Defendant Small was subjectively aware of, and thereby subjectively indifferent to,

any health issue caused by the lighting condition. The mere fact that Plaintiff covered the light could not sufficiently inform Defendant Small that Plaintiff was experiencing serious health issues because of the light.

Accordingly, the Court finds that Defendant Small is entitled to summary judgment on Plaintiff's Eighth Amendment claim.

### B.  First Amendment Claims

The Ninth Circuit consistently has held that prison staff may not retaliate against inmates for exercising their constitutional rights to file lawsuits and grievances. *Rizzo v. Dawson*, 778 F.2d 527 (9th Cir. 1983); *Barnett v. Centoni*, 31 F.3d 813 (9th cir. 1994); *Pratt v. Rowland*, 65 F.3d 802 (9th Cir. 1995); *Rhodes v. Robinson*, 408 F.3d 559 (9th Cir. 2005). In order to establish a retaliation claim, an inmate must show that: 1) a state actor took some adverse action against the inmate; 2) because the inmate engaged in constitutionally protected conduct; 3) the adverse action chilled the inmate's exercise of First Amendment rights; and, 4) the adverse action did not reasonably advance a legitimate correctional goal. *Rhodes*, 408 F.3d at 567-68.

In order to withstand summary judgment, Plaintiff must submit evidence linking the alleged retaliation and the exercise of his First Amendment rights. *Pratt*, 65 F.3d at 807. Plaintiff must show that the exercise of his First Amendment rights was the substantial or motivating factor behind Defendants' conduct. *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). Plaintiff must raise a genuine issue of material fact as to retaliatory motive. The Ninth Circuit has explained that "in addition to evidence that the defendant knew of the protected speech, at least (1) evidence of proximity in time between the protected speech and the allegedly retaliatory decision, (2) evidence that the defendant expressed opposition to the speech or (3) evidence that the defendant's proffered reason for the adverse action was false or pre-textual" must be produced. *Pinard v. Clatskanie School Dist. 6J*, 467 F.3d 755, 771 n.21 (9th Cir. 2006).

Additionally, as an incarcerated individual, Plaintiff's First Amendment rights are limited in the prison setting, such that his retaliation claims are only viable upon a finding that Defendants' allegedly retaliatory actions were not tailored narrowly enough to achieve legitimate goals of the correctional institution. *Pratt*, 65 F.3d at 806. It is incumbent upon the Court to

"'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt*, 65 F.3d at 807 (quoting *Sandin v. Conner*, 515 U.S. 472, 482-483 (1995)).

As discussed below, Plaintiff's retaliation claims do not withstand summary judgment. He has not presented evidence that: (1) Defendants took adverse action against him because he engaged in constitutionally protected conduct; (2) Defendants' actions were not taken for the legitimate penological reasons of enforcing prison regulations and maintaining prison safety; or (3) that Plaintiff's First Amendment rights were in fact chilled by Defendants' acts. Therefore, Defendants' are entitled to summary judgment on the remainder of Plaintiff's claims.

**July 16 Incident**

Plaintiff's first claim of retaliation is premised on the RVR prepared by Defendant Arias on July 16, 2007 regarding Plaintiff's misconduct in covering the light in his cell. However, the undisputed evidence demonstrates that Defendant Arias wrote numerous rule violation reports for the same misconduct to other inmates during that same time period. [SUF ¶ 17.] Because Defendant Arias equally enforced the institution's rules and regulations, Plaintiff cannot claim that Defendant Arias singled him out, particularly when the only evidence Plaintiff has is the RVR itself. Indeed, Plaintiff presents no evidence that his constitutionally protected actions were a substantial or a motivating factor in Defendant Arias' decision to report Plaintiff's misconduct in covering the light in his cell. Of note, Defendant Arias was not a defendant in Plaintiff's 2007 Action, so there is some amount of uncertainty whether he even had reason to retaliate. In the end, even treating Plaintiff's FAC as verified, no facts contained therein support a finding of retaliatory motive.

Likewise, Plaintiff fails to present any evidence which demonstrates retaliation on the part of Defendants Madden and Davis. On the contrary, Defendants have presented evidence which demonstrates Defendant Madden played no role whatsoever in the classification or review of the July 16, 2007 RVR [SUF ¶ 21], and that Defendant Davis, who was also not a named party in Plaintiff's previous action, simply agreed with the determination made by another lieutenant that Plaintiff's misconduct amounted to a serious rule violation.

Furthermore, the evidence demonstrates that there were legitimate penological reasons (i.e., safety and security needs) for issuing the initial citation for covering the light, as well as for the subsequent classification of the rule violation as "serious." This serves as an independent basis upon which to grant summary judgment in favor of Defendants on this particular instance of alleged unconstitutional retaliation.

**July 18 and July 25 Incidents**

Plaintiff alleges that Defendant Vargas failed to deliver indigent envelopes to him in retaliation for filing the 2007 Action. However, the evidence demonstrates that Defendant Vargas did not know that Plaintiff had requested envelopes, as he did not work in the mail room and would not have known about Plaintiff's request unless the mail room had actually sent the envelopes to the housing unit where Defendant Vargas worked. However, due to a mail room error, the mail room never sent the envelopes. Thus, while it is evident that a problem in the delivery of envelopes to Plaintiff existed, Defendant Vargas lacked any involvement in the failure to deliver envelopes, foreclosing any possibility that he purposefully withheld envelopes in an effort to retaliate against Plaintiff. Thus, Defendant Vargas is entitled to summary judgment and dismissal of Plaintiff's claim against him.

**July 20 Incident**

On July 20, 2007, Defendant Arias filed an RVR regarding Plaintiff's disrespect of staff. Plaintiff does not dispute that he engaged in misbehavior; rather, he alleges that his use of vulgar language and disrespectful conduct to staff should have been classified as an "administrative" rather than a "serious" rule violation. The evidence provided by Defendants, however, demonstrates that it was appropriate for the violation to be deemed "serious": Plaintiff used highly disrespectful language in an environment where staff must maintain respect and keep inmates calm for their own safety. [SUF ¶ 30.] Inmates often react to vocal disrespect by becoming violent themselves, and often respond by flooding their cells, beating cell door fronts, starting fires and yelling. Thus, the undisputed evidence suggests that it was critical that Defendant Arias stop Plaintiff's behavior in order to maintain the safety of the cell block. Additionally, as discussed above, the decision to categorize Plaintiff's misconduct as "serious" was made by Lieutenant

Nelson, who is not a defendant in this action, so any claim of retaliation related to this decision fails.

In any event, Plaintiff makes the conclusory allegation that Defendants performed the above acts in retaliation, yet provides no evidence to support this claim. As Defendants have presented ample evidence demonstrating otherwise, there remain no genuine disputes of material fact, and Defendants are entitled to summary judgment on this claim.

**August 12 Incident**

Plaintiff claims that Defendant Hopper retaliated against him by telling Officer Haley and Officer Trujillo not to let Plaintiff go to the recreation yard on August 12, 2007, and to confine him to his cell for that day. Again, Plaintiff fails to produce any evidence to establish any retaliatory conduct or motive. Defendant Hopper was not a defendant in the prior lawsuit; Plaintiff has no recollection of Hopper imposing the alleged confinement; and there is no record of the confinement. Further, even if a one-day confinement was imposed, this, standing alone, is insufficient to establish that such confinement was ordered in retaliation, rather than for a legitimate correctional reason. Thus, Defendants are entitled to summary judgment.

**September 18 Incident**

Plaintiff alleges that on September 18, 2007, Plaintiff was taken to a classification committee to be put on "C Status" because Plaintiff had received two serious rules violations. Formal records indicate that Plaintiff went before the Unit Classification Committee ("UCC") on September 18, 2007, and that on the date, based on receiving two serious rule violations within the past six months, he was placed in "Privilege Group C." [SUF ¶ 43.] Placing an inmate in Privilege Group C (with a reduction in privileges for that inmate) for two serious rule violations within a six month period of time serves the proper correctional purpose of deterring future inmate misconduct in order to keep inmates and staff safe and to keep prison programs functioning. [*Id.* ¶ 44.] With respect to Plaintiff's claim that his infractions should not have been "serious," Defendants have submitted evidence which demonstrates that Plaintiff's misconduct was properly labeled as "serious." Therefore, it was proper to place Plaintiff into Privilege Group C, which

resulted in a variety of restrictions being placed on Plaintiff.[5]  In the end, the undisputed evidence demonstrates that each of the acts referenced in connection with the September 18, 2007 incident were performed for a legitimate penological and correctional purpose, not a retaliatory purpose.

Finally, with respect to all of the First Amendment claims, Defendants' purported acts did not chill Plaintiff's exercise of his First Amendment rights.  To the contrary, he vigorously litigated the 2007 Action through April 2012, when the Ninth Circuit affirmed the District Court's order granting summary judgment in favor of Defendants on all remaining claims.  He also successfully filed this lawsuit, further demonstrating his rights have not been chilled.  Thus, Plaintiff cannot establish this requirement of a First Amendment retaliation claim.

**C.     Qualified Immunity**

Defendants claim entitlement to qualified immunity.  Qualified immunity protects government officials acting in their official capacities from civil liability unless their conduct violates "clearly established" statutory or constitutional rights of which a "reasonable" official would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In *Saucier v. Katz*, 533 U.S. 194, 202 (2001), the Supreme Court imposed a specific analysis for determining whether qualified immunity is warranted.  The court first considers whether the facts alleged, taken in the light most favorable to plaintiff, show that the officer's conduct violated a constitutional right.  533 U.S. at 201.  If the court finds no violation occurred, "[t]he inquiry ends," and "the plaintiff cannot prevail." *Motley v. Parks*, 432 F.3d 1072, 1077 (9th Cir. 2005) (en banc).  If the facts alleged demonstrate a constitutional violation, the court will then consider whether the right in question was "clearly established" such that a reasonable officer would know that "his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

Because the facts taken in the light most favorable to Plaintiff demonstrate Defendants did not violate Plaintiff's constitutional rights, it is unnecessary for the Court to determine

---

[5] Plaintiff objects to some of these restrictions, namely that: (1) his employment was permanently taken from him; (2) he had to spend 22 hours per day in his cell; (3) he was only allowed to use the phone once a month for 15 minutes; and (4) he was not allowed to be considered for a transfer closer to his family.  The Court has considered these arguments, and based on the evidence provided by Defendants, finds that the Defendants did not violate Plaintiff's constitutional rights in purportedly restricting Plaintiff in these ways.

Defendants' entitlement to qualified immunity.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' motion for summary judgment. This order resolves all remaining claims as to all remaining parties. Accordingly, the Court instructs the Clerk of Court to enter judgment in favor of Defendants and terminate the case.

**IT IS SO ORDERED**.

DATED: March 8, 2013

*[signature]*

Hon. Michael M. Anello
United States District Judge